UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| LOUIS R. MATTHEWS, | ) |
| | ) |
| Plaintiff, | ) No. 6:24-cv-62-REW |
| | ) |
| v. | ) |
| | ) |
| USP MCCREARY, *et al.*, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Louis R. Matthews is a prisoner currently confined at the Nevada Southern Detention Center in Pahrump, Nevada. Matthews filed a civil rights complaint against the United States Penitentiary McCreary ("USP McCreary"), where he was previously confined; Federal Bureau of Prisons ("BOP") Director Collette Peters[1]; and several officials at USP McCreary[2]. *See* DE 1 (Complaint). By prior Order, the Court granted Matthews's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. *See* DE 8 (Order Granting IFP). The Court now screens Matthews's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Since Matthews is not represented by an attorney, the Court construes his claims liberally. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

---

[1] On January 20, 2025, William W. Lothrop was named the BOP's Acting Director following Collette Peters's separation from the agency. *See* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/agency/bio_depdir.jsp (last accessed Jan. 27, 2025). Lothrop is automatically substituted as a defendant in place of Peters pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] These officials are Warden John Gilley, SIS Lt. Carson, SHU Lt. Gabbard, Lt. Stapleton, Lt. Smith, SIS Lt. Asher, Lt. Garland, Correctional Officer D. Keeton, Correctional Officer Charles Walker, Correctional Officer Privett, Correctional Officer J. Perry, Correctional Officer Edwards, Correctional Officer Thomas, Correctional Officer Hale, Correctional Officer Dezarn, Correctional Officer King, Correctional Officer Gibson, John Doe 1 (Unknown Correctional Officer), John Doe 2 (Unknown Correctional Officer), PA Privett, PA Perry, PA Stephens, and PA T. Smith. *See* DE 1 at 1–3.

## I.

Matthews was housed in the special housing unit ("SHU") at USP McCreary in March 2023. *See* DE 1 at 3. On March 14, 2023, Matthews claims that Correctional Officer Privett kicked his cell door, but neither Matthews nor his cellmate responded because they were sleeping. *See id.* According to Matthews, CO Privett then yelled that he would "spray the cell." *See id.* Matthews, who was awake by that point, told CO Privett that he could not "use force for no reason." *See id.* CO Privett directed Matthews and his cellmate to "cuff up." *See id.* Matthews initially refused to do so but agreed after speaking with SHU Lieutenant Gabbard. *See id.* Matthews was removed from his cell and placed in a cage in the SHU rotunda. *See id.* While walking to the rotunda, CO Privett allegedly cursed at Matthews and referred to him using a racial slur. *See id.* Matthews alleges that he told Lt. Gabbard about CO Privett's comment about five minutes later, but Lt. Gabbard denied that CO Privett made the slur. *See id.* at 3–4.

Matthews was eventually placed in paper clothing and returned to his regular cell in the SHU, where he noticed that his mattress had been removed. *See id.* at 4. According to Matthews, CO Privett took away the mattress to "further harass him," and Matthews's requests for a mattress over the next couple of hours were ignored. *See id.* In response, Matthews covered his cell window as a form of protest and refused to remove the covering. *See id.*

Matthews alleges that Correctional Officer Charles Walker later sprayed his cell with OC spray and yelled "stop fighting your celly," even though Matthews and his cellmate were not fighting. *See id.* CO Walker then handcuffed Matthews and his cellmate. *See id.* at 5. Matthews claims that CO Walker took him to a "blind[] spot" in the SHU rotunda, slamming Matthews on his face. *See id.*

Although the subsequent sequence of events is somewhat difficult to follow, Matthews

2

alleges that several officers, including CO Walker and Lt. Gabbard, physically abused him. *See id.* at 5–6, 10. After Lt. Stapleton, another defendant in this action, accused Matthews of spitting on an officer, Matthews was placed into four-point restraints, where he allegedly remained for 48 hours. *See id.* at 7. While officers and medical staff performed two-hour checks on him during this time, Matthews reports that he showed various physician assistants that he was bleeding from the restraints, but they declined to help him. *See id.* at 5–6. Matthews further alleges that he showed his injuries to Warden Gilley, and Gilley walked away. *See id.* at 8.

Matthews contends that he sustained injuries as a result of the OC spray and the use of the four-point restraints. *See id.* Specifically, he suffered skin irritation, which was exacerbated by the fact that he had been forced to urinate on himself while in restraints. *See id.* Further, the restraints cut his skin, and he was unable to move his hands and fingers after being released. *See id.* Upon his release from the restraints, Matthews met with PA Privett for a medical check. *See id.* She advised Matthews to rinse the cuts with water but walked away before he could tell her about his other injuries. *See id.* Matthews also claims that PA Privett "only brought mental health medication to [him] when she felt like it." *Id.* at 10. He alleges that PA Perry was "evil to [him]" and ignored his requests for help with his injuries. *Id.* According to Matthews, he told PA Stephens that his hands were "dead," but PA Stephens simply responded, "That sucks." *Id.* Matthews describes PA T. Smith as "actually a cool guy," but maintains that PA Smith failed to speak up and "go against the code." *Id.*

Finally, Matthews alleges that, when he was returned to his unit upon his release from the four-point restraints, some of his property was missing. *See id.* at 8. When asked about the missing property, Correctional Officer D. Keeton informed Matthews that he had thrown it away. *See id.* at 9. Matthews also claims that CO Keeton ate some of his food. *See id.*

3

Matthews claims that the defendants violated several of his constitutional rights including his Fifth Amendment rights to due process and equal protection; his Eighth Amendment right to be free from cruel and unusual punishment, including use of excessive force and deliberate indifference to his serious medical needs; and his First Amendment rights to free speech and to protest. *See id.* at 11. Subsumed within these claims are allegations of police brutality, discrimination, police abuse, mistreatment, and sexual abuse. *See id.* For relief, Matthews seeks $10 million in damages and requests that he not be sent back to any BOP facility, including USP McCreary. *See id.* at 15. He also seeks the appointment of counsel and to "press criminal charges." *Id.*

## II.

The Court begins by considering Matthews's claims for money damages. These claims can only be pursued under *Bivens v. Six Unknown Federal Narcotics Agents*, 91 S. Ct. 1999 (1971), which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" constitutional rights. *Bivens*, 91 S. Ct. at 2005. However, a *Bivens* claim is only properly asserted against federal employees in their *individual* capacities. *See Corr. Servs. Corp. v. Malesko*, 122 S. Ct. 515, 522 (2001); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003). This means that the Court must dismiss any claim for money damages against USP McCreary and the defendant-employees in their official capacities. Having performed a thorough review of the Complaint, the Court concludes that the only claims for money damages that may proceed are those against PA Privett, PA Perry, PA Stephens, and Warden Gilley.

Courts may only imply the *Bivens* remedy in limited circumstances. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Since *Bivens* was decided in 1971, the Supreme Court has recognized a private right of action for damages for a constitutional violation in only three

4

circumstances: (1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *see Bivens*, 91 S. Ct. at 2005; (2) where a Congressperson terminates an employee on the basis of gender in violation of the Fifth Amendment, *see Davis v. Passman*, 99 S. Ct. 2264, 2279 (1979); and (3) where prison officials display deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *see Carlson v. Green*, 100 S. Ct. 1468, 1474 (1980). *See Ziglar*, 137 S. Ct. at 1854–55 (summarizing cases).

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (observing that since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb"). The Supreme Court's clear directive is that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857; *see also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril."). Specifically, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 122 S. Ct. at 520.

Courts take a broad approach in interpreting whether a claim is presented in a new context. *See Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019). A context is sufficiently new if it is "'different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court.'" *Jacobs*, 915 F.3d at 1037 (quoting *Ziglar*, 137 S. Ct. at 1859). A context may differ in a meaningful

5

way

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860. Before extending the *Bivens* remedy to a new context, the Court must consider whether there are any special factors that counsel hesitation. *See id.* at 1857. The Court must "not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 2937 (2021)).

With the exception of his claims against PA Privett, PA Perry, PA Stephens, and Warden Gilley—which arguably allege deliberate indifference to his serious medical needs[3]—Matthews's claims present contexts that are entirely new and different than those previously recognized by the Supreme Court as cognizable under *Bivens*.

First, Matthews appears to argue that one or more defendants violated his First Amendment rights to free speech and to protest by punishing him for refusing to uncover his cell window, a form of peaceful protest to the removal of his mattress. *See* DE 1 at 4. But as the Sixth Circuit has noted, the Supreme Court "has never recognized a *Bivens* action for any First Amendment right." *Callahan*, 965 F.3d at 523.

Likewise, Matthews's Fifth Amendment claims are also entirely different from other permissible *Bivens* actions. Construing his complaint liberally, Matthews alleges that he was deprived of his property without due process of law and that he was denied equal protection based

---

[3] Though Matthews mentions, and ultimately sues PA Smith, nothing about the claims raised against Smith plausibly alleges that he was deliberately indifferent to Matthews's serious medical needs. *See* DE 1 at 10.

6

on his race. *See* DE 1 at 11. While *Davis* recognized an implied remedy under the Fifth Amendment, that case involved gender discrimination in the context of federal employment, a context not implicated by the Fifth Amendment claims here. *See Myers v. FCI Ashland*, No. 22-6111, 2024 WL 3085079, at *2 (6th Cir. Jan. 4, 2024) (concluding that *Davis* differed "in a meaningful way" from prisoner's claims of race discrimination against prison officials).

Finally, Matthews's Eighth Amendment excessive force claims arise in a new context from those deemed cognizable by the Supreme Court. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. 13, 2022) (observing that the plaintiff's Eighth Amendment claims against federal corrections officers and officials for excessive force arose in a new context and involved a new category of defendants, making them "presumptively non-cognizable"). Even though the Supreme Court recognized a claim for Eighth Amendment violations in *Carlson*, that case involved deliberate indifference to a prisoner's serious medical needs, not a prison official's use of force.

Moreover, multiple reasons also counsel against extending *Bivens* to Matthews's First Amendment, Fifth Amendment, and Eighth Amendment excessive force claims. For instance, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights, *see* 42 U.S.C. § 1983, but has failed to implement an analogue for federal actors, despite ample opportunity to do so. This suggests that Congress has purposely limited the damages remedy as it pertains to federal actors. As the Supreme Court explained in *Ziglar*:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this

7

>suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

137 S. Ct. at 1865 (citations omitted).

Next, there are several alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 122 S. Ct. at 523 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring"). Courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy that counsels against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-cv-00081, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

Additionally, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General serves as a deterrent to misconduct. *See Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Malesko*, 122 S. Ct. at 520 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Turner v. Safley*, 107

S. Ct. 2254, 2259 (1987). Certainly, the Court would hesitate before interfering in "everyday federal prison administration to . . . decide the threshold for acceptable risk to personnel or inmate safety" or to "determine what kind of compensatory and punitive damages are available for such claims . . . without input from the legislative and executive branches." *Callahan*, 965 F.3d at 524–25.

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. 1793 at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Since multiple factors counsel strongly against implying a *Bivens* remedy for Matthews's First Amendment, Fifth Amendment, and Eighth Amendment excessive force claims, the Court will not do so here. Accordingly, the Court will dismiss those claims with prejudice.

### III.

Matthews also seeks injunctive relief. *See* DE 1 at 15. While *Bivens* does not provide for injunctive relief, a prisoner may seek such relief under the Administrative Procedure Act (5 U.S.C. § 702). *See Krieg v. Warden, USP-McCreary*, No. 6:24-CV-37-CHB, 2024 WL 1470577, at *2 (E.D. Ky. Mar. 20, 2024) (citing § 702). Under this provision, a person may seek injunctive relief based on a federal official's alleged violation of a constitutional right. *See id.* Matthews does not link his demand for injunctive relief to any particular defendant or any particular constitutional claim. However, based on the allegations throughout his complaint, he appears to allege that the requested injunctive relief is necessary to avoid the infliction of cruel and unusual punishment in violation of the Eighth Amendment. *See generally* DE 1.

Matthews, who is currently being held at the Nevada Southern Detention Center, asks to "not . . . be sent back to [the Federal Bureau of Prisons] or USP McCreary." *See* DE 1 at 15.

9

Matthews was sentenced to life imprisonment following convictions for conspiring to possess marijuana with the intent to distribute it and using a firearm in relation to, and in furtherance of, a drug trafficking crime resulting in death. *See United States v. Matthews*, 2:15-cr-062-APG-DJA-2 (D. Nev. Aug. 16, 2019), DE 360 (Amended Judgment). Although Matthews does not explain why he was transferred out of USP McCreary, a review of the publicly available docket in his criminal case reveals that he filed a motion under 28 U.S.C. § 2255 and was transported to Nevada in late 2023 to attend an evidentiary hearing in that matter. *See id.*, DE 487 (Status Report). Although the hearing was originally scheduled to take place on February 1, 2024, it was canceled, and Matthews was given additional time to file an amended § 2255 motion. *See id.*, DE 495 (Status Conference Minutes); DE 508 (Extension of Time). As it stands, Matthews remains confined at the Nevada Southern Detention Center and his amended § 2255 brief is due by June 2, 2025. *See id.*, DE 523 (Order). Normally, when a prisoner is transferred away from the facility where the complained of conduct occurred, his request for injunctive relief becomes moot. *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)). While it does not appear that Matthews will be transferred back to BOP custody any time soon, he presumably will return to BOP custody at some point in the future. Accordingly, the Court will order Acting BOP Director William W. Lothrop and USP McCreary Warden John Gilley to respond to this claim.

Matthews additionally asks the Court to order the BOP Regional Director (who is not named as a defendant) to "send grievances/responses, everything to [him] now." *See* DE 1 at 15. The regulations that set forth the BOP's administrative remedy program encourage prisoners to retain their own copies of exhibits. *See* 28 C.F.R. § 542.14(c)(3). And while inmates may request access to administrative remedy indexes and responses pursuant to the procedure described in 28

C.F.R. § 542.19, there is no indication that Matthews has done so here.  Accordingly, the Court will, at this time, deny this request.[4]

The Court will also deny Matthews's request to "press criminal charges."  *See* DE 1 at 15.  The Court is not free to interfere with prosecutorial discretion and has no power to direct a prosecuting authority to file criminal charges.  *See Peek v. Mitchell*, 419 F.2d 575, 577–78 (6th Cir. 1970) (citations omitted).  Further, the United States will have notice of the allegations.

### IV.

Finally, the Court considers Matthews's request to appoint counsel.  The Court may appoint counsel to represent a *pro se* party in civil litigation but only in truly exceptional circumstances.  *See Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003).  When considering such a request, the Court assesses the complexity of the case, the movant's likelihood of success on the merits of his claims, and the plaintiff's ability to represent himself competently.  *See Cleary v. Mukasey*, 307 F. App'x 963, 965–66 (6th Cir. 2009).

In this case, Matthews's claims are not unduly complex.  While the Court will await Defendants' responses before fully evaluating Matthews's surviving claims, a thin likelihood of success cuts against appointment.  With respect to the remaining Eighth Amendment claims, based on the allegations currently in front of the Court, it appears unlikely that any defendant was *deliberately* indifferent to a *serious* medical need.  And regarding the claim for injunctive relief, Matthews is unlikely to prevail on his claim that he should never return to *any* BOP facility, given that he is serving a federal sentence.  The Court also notes that Matthews was able to draft a lengthy, detailed complaint, and he navigated filing and fee mechanics without outside assistance.

---

[4] Matthews does not have the burden of proving that he exhausted administrative remedies at this stage of the proceedings.  *See Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (observing that an inmate's failure to exhaust administrative remedies is an affirmative defense that the defendants must plead and prove by the preponderance of the evidence).

In sum, this case does not present the kind of extraordinary circumstances warranting the appointment of counsel.

V.

Based on the foregoing, the Court hereby **ORDERS** as follows:

1. The Clerk is directed to **TERMINATE** Collette Peters as a defendant and **SUBSTITUTE** William W. Lothrop, the Acting Director of the Federal Bureau of Prisons, in Peters's place;

2. After initial review of the Complaint (DE 1), the following claims **REMAIN PENDING**:

    a. Eighth Amendment claims against PA Privett, PA Perry, PA Stephens, and Warden John Gilley in their individual capacities, for deliberate indifference to Matthews's serious medical needs; and

    b. Claims for injunctive relief regarding Matthews's future transfer to USP McCreary or another BOP institution against Acting BOP Director William W. Lothrop and Warden Gilley, in their official capacities;

3. The remainder of the Complaint (DE 1) is **DISMISSED** with **prejudice** for failure to state a claim upon which relief can be granted. Accordingly, the following defendants are **DISMISSED** as parties to this action: USP McCreary; SIS Lt. Carson; SHU Lt. Gabbard; Lt. Stapleton; Lt. Smith; SIS Lt. Asher; Lt. Garland; Correctional Officer D. Keeton; Correctional Officer Charles Walker; Correctional Officer Privett; Correctional Officer J. Perry; Correctional Officer Edwards; Correctional Officer Thomas; Correctional Officer Hale; Correctional Officer Dezarn; Correctional Officer

King; Correctional Officer Gibson; John Doe 1 (Unknown Correctional Officer); John Doe 2(Unknown Correctional Officer); and PA T. Smith;

4. The Clerk **SHALL** prepare "Service Packets" for service upon PA Privett, PA Perry, PA Stephens, Acting BOP Director William W. Lothrop, and USP McCreary Warden John Gilley.  These packets shall include:

    a. A completed summons form;

    b. The Complaint (DE 1);

    c. The Order granting Plaintiff *in forma pauperis* status (DE 8);

    d. This Order; and

    e. A completed USM Form 285;

5. The Deputy Clerk **SHALL** deliver the Service packets to the United States Marshals Service in Lexington, Kentucky, and note the date of delivery in the docket;

6. The USMS **SHALL** personally serve Defendants PA Privett, PA Perry, and PA Stephens, and Warden Gilley at USP McCreary in Pine Knot, Kentucky, through arrangement with the Federal Bureau of Prisons;

7. The USMS **SHALL** serve Defendants Acting BOP Director William W. Lothrop and USP McCreary Warden John Gilley by sending a Service Packet by certified mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky in Lexington, Kentucky, and the Office of the Attorney General of the United States in Washington, D.C.; and

8. Matthews **SHALL** immediately notify the Clerk's Office of any change in his current mailing address.  Failure to do so may result in dismissal of this case.

This the 28th day of January, 2025.

Signed By:
*Robert E. Wier*  /s/ REW
United States District Judge

14