UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| LOUIS R. MATTHEWS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:24-CV-62-REW |
| | ) | |
| v. | ) | |
| | ) | |
| USP MCCREARY, *et al.*, | ) | AMENDED ORDER (AMENDING DE 39) |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants move to dismiss Plaintiff Louis R. Matthews's Amended Complaint. *See* DE 35 (Motion to Dismiss). Matthews responded in opposition, *see* DE 37 (Response), and Defendants replied. *See* DE 38 (Reply). Thus, the matter is ripe for decision. For the reasons outlined below, the Court **GRANTS in part and DENIES in part Defendants' motion to dismiss (DE 35)**.

I.      **Background**

Federal inmate Louis R. Matthews is serving a life term of imprisonment for conspiring to possess a controlled substance with the intent to distribute and using a firearm during and in relation to a drug trafficking crime, resulting in death. *See United States v. Matthews*, No. 2:15-cr-00062-APG-DJA (D. Nev. Aug. 16, 2019).[1] Matthews was housed at United States Penitentiary ("USP") McCreary from December 2, 2022, until November 14, 2023. *See* DE 35-1 (Declaration

_____

[1] Matthews was convicted and sentenced to life imprisonment in February 2017. *See United States v. Matthews*, No. 2:15-cr-00062-APG-DJA (DE 213). However, the United States Court of Appeals for the Ninth Circuit reversed his convictions and vacated his sentence. *See United States v. Matthews*, No. 17-10057 (9th Cir., Jan. 19, 2018). Matthews was retried and convicted in April 2019. *See Matthews*, No. 2:15-cr-00062-APG-DJA (DE 339). He was sentenced to life imprisonment in August 2019.

of Robin Eads) ¶ 3.  Matthews was subsequently transported to the Nevada Southern Detention Center ("NSDC") so that he could participate in proceedings related to a 28 U.S.C. § 2255 motion Matthews filed in his underlying criminal case.  *See id*.  Although Matthews is still designated to USP McCreary, he remains at NSDC pursuant to a federal writ.  *Id.*

The Court previously described Matthews's allegations in detail, *see* DE 10, so only the relevant allegations will be reiterated here.  Matthews alleges that correctional officers at USP McCreary used excessive force against him on March 14, 2023, to March 16, 2023, by deploying OC spray in his cell, assaulting him, placing him in four-point restraints (where he remained for 48 hours), and committing other various forms of physical abuse.  *See* DE 1 at 3-7.  Matthews contends that the OC spray burned his skin and that his ankles, wrists, back, stomach, and legs were bleeding from the restraints.  *See id.* at 8.  Matthews alleges that while he was restrained, he showed various physician assistants that he was bleeding, but they failed to help him.  *See id*. at 5-6.  Matthews also alleges that just prior to his release from the restraints, he showed his injuries to Defendant Warden Gilley, who simply walked away.  *See id.*

Upon release from the restraints, Matthews alleges he met with PA Privett, who curtly advised him to rinse his cuts with water.  *See id.*  However, according to Matthews, Privett walked away before he could tell her about his other injuries, including a lack of movement in his hands and fingers.  *See id.*  Matthews also claims that PA Privett only brought him his mental health medication "when she felt like it."  *Id.* at 10.  He alleges that PA Perry was "evil to [him]" and ignored his requests for help.  *See id.*  Finally, Matthews reports that he told PA Stephens that his hands were "dead," and PA Stephens responded, "That sucks."  *See id.*  Finally, Matthews alleges that upon return to his unit, some of his property was missing.  *See id.* at 8.  When asked about the

missing property, Correctional Officer ("C.O.") D. Keeton informed Matthews that he had thrown it away. *See id.* at 9.

Matthews commenced this action on May 7, 2024, alleging that Gilley's, Privett's, Perry's, and Stephens's actions constitute deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[2]  *See* DE 1.  He suggests, *e.g.*, DE 7, long-term injury from the restraints and use of force.  Matthews was permitted to amend his complaint to add a claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680.  *See* DE 34, DE 29-2.  For relief, Matthews seeks money damages from the individual defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 91 S. Ct. 1999 (1971) and from the United States pursuant to the FTCA.  Finally, Matthews seeks an injunction mandating that he "not . . . be sent back to [the Federal Bureau of Prisons] or USP McCreary." *See* DE 1 at 15.  On August 26, 2025, Defendants filed the present motion to dismiss. *See* DE 35.  The Court has pared or postured the case through prior rulings. *See* DE 10 & 34.

## II.    Rule 12(b)(6) Motion

### A. Standard

Defendants assert that Matthews's Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* DE 35 at 1.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

---

[2] Matthews also alleged that the correctional officers' use of force violated his Eighth Amendment right to be free from cruel and unusual punishment.  However, the Court previously dismissed those claims because there is no *Bivens*-type remedy for allegations of excessive force.  *See*  DE 10.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1964–65. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

District courts typically are "not permitted to consider matters beyond the complaint" when considering a motion to dismiss under Rule 12(b)(6). *See Mediacom Southeast LLC v. Bellsouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). Doing so would "convert the motion to dismiss into a motion for summary judgment." *Id.* However, when presented with a Rule 12(b)(6) motion, a court may consider exhibits attached to the complaint and/or the motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## B. Exhaustion

The Prison Litigation Reform Act requires a prisoner to fully exhaust his administrative remedies before filing suit to assert a civil claim regarding the conditions of his confinement. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 127 S. Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). There is a multi-tiered administrative remedy process (ARP) within the BOP. If a matter cannot be resolved with staff informally, *see* 28 C.F.R § 542.13(a), the prisoner must file a BP-9 Administrative Remedy Request Form with the Warden, who has 20 days to respond. *See id.* §§ 542.14(a), 542.18. If the prisoner is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See id.* §§ 542.15, 542.18. If the prisoner is not satisfied with the Regional Director's response, he may use

4

a BP-11 Form to appeal to the General Counsel, who has 40 days to respond.  *See id.* §§ 542.15, 542.18.  To satisfy the exhaustion requirement, the inmate must fully comply with the relevant agency's "deadlines and other critical procedural rules."  *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).

Defendants argue that Matthews's *Bivens* claims must be dismissed because he failed to exhaust administrative remedies.  *See* DE 35 at 4-7.  Defendants rely on the Declaration of BOP Paralegal Robin Eads, who reports that Matthews filed three administrative remedies that pertain to the alleged staff assault in March 2023, and the subsequent alleged lack of medical care.  *See* DE 35-1 at 3-4.  Specifically, Eads reports:

> a.    On June 16, 2023, Plaintiff submitted a request for administrative remedy to the regional director for the Mid-Atlantic Regional Office, in which he complained of staff misconduct, staff assault, and lack of medical treatment. [Att. C, Remedy ID# 1165369.]  The remedy was assigned remedy ID number 1165369. [*Id.* at 9, Attachment D, Administrative Remedy Packet No. 1165369.] Following the regional director's response on August 7, 2023, which closed the claim at the regional level, Plaintiff failed to appeal to the Office of General Counsel. [See Att. C.]

> b.    On July 10, 2023, Plaintiff submitted a request for administrative remedy to the warden at USP McCreary, in which he complained of staff misconduct, staff assault, lack of medical treatment, and missing property [Att. C, Remedy ID# 1168147.]  The remedy was assigned remedy ID number 1168147. [Id. at 11, Attachment E, Administrative Remedy Packet No. 1168147.]  Following the warden's response on July 20, 2023, which closed the claim at the institutional level, Plaintiff failed to appeal to the regional director and Office of General Counsel. [See Att. C.]

> c.    On September 25, 2023, Plaintiff submitted a request for administrative remedy to the regional director for the Mid-Atlantic Regional Office, in which he complained of staff misconduct, staff assault, lack of medical treatment, and missing property. [Att. C, Remedy ID# 1176864.]  The remedy was assigned remedy ID number 1176864. [Id. at 12, Attachment F, Administrative Remedy Packet No. 1176864.] Following the regional director's response on February 2, 2024, which closed the claim at the regional level, Plaintiff failed to appeal to the Office of General Counsel. [See Att. C.]

*See* DE 35-1 at 3–4.

5

Defendants do not explain, procedurally, why the Court should consider Eads's declaration in deciding the motion to dismiss. After all, the Court is generally limited to the pleadings during this analysis, and Defendants do not contend that the declaration is "referred to in the complaint and [is] central to the claims contained therein." *See Bassett*, 528 F.3d at 430. Moreover, exhaustion of administrative remedies is an affirmative defense and "[c]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Davis v. Davis*, No. 14-5247, 2015 WL 13187145, at *2 (6th Cir. Mar. 25, 2015) (citations omitted). Matthews's complaint makes no reference to the three administrative remedies filed, so Eads's declaration is not properly under consideration at this stage.

Even if consideration of Eads's declaration was proper at this stage, Defendants have not established that Matthews failed to exhaust his available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.") (emphasis added). An administrative remedy is considered unavailable where officers are consistently unwilling to provide relief, where no ordinary prisoner could navigate the procedures, or "when prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *See Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). In his response, Matthews reports that he "tried to exhaust his remedies, but USP McCreary officers continued to storm his room and take any and everything/all paperwork, grievances, and responses dealing with this incident." *See* DE 37 at 3. Matthews further alleges that he was harassed, and that his incoming and outgoing mail was "trashed." *See id.* He also

6

reports that on August 10, 2023, C.O. Sims searched his cell and took two packets—one addressed to BOP Regional Counsel and the other addressed to Matthews's attorney.  *See id.*

Accordingly, because Eads's declaration cannot be considered at this stage of the litigation, and because it is unclear whether, as a factual matter, Matthews exhausted the available administrative remedies, Defendants' motion to dismiss Matthews's *Bivens* claims on exhaustion grounds will be denied.

### C.  Merits of Matthews's Remaining *Bivens* Claims

Matthews claims that Defendants Gilley, Privett, Perry, and Stephens were deliberately indifferent to his serious medical needs when they failed to properly care for his cuts, burning skin, and hand paralysis following correctional officers' use of force against him.  *See* DE 1 at 8, 10. These claims necessarily arise under the Eighth Amendment since Matthews was a convicted prisoner at the time the alleged conduct occurred.  *See Coleman v. Hamilton Cnty. Bd. of Cnty. Comms.*, 130 F.4th 593, 599 (6th Cir. 2025) ("Corrections officers must protect convicted prisoners from harm under the Eighth Amendment, and they must protect pretrial detainees from harm under the Due Process Clause.").

Defendants move to dismiss Matthews's deliberate indifference claims in light of *Egbert v. Boule*, 142 S. Ct. 1793 (2022) and related authority.  Specifically, Defendants argue that, under the *Egbert* framework, Matthews's claims arise in a new context and that special factors counsel against extending *Bivens* to permit his claims.  *See* DE 35 at 7-18.  In response, Matthews continues to focus on his claims of excessive force, which were previously dismissed since they are not cognizable under *Bivens*.  *See* DE 37 at 5.  With respect to his deliberate indifference claims, Matthews simply suggests that it would be unjust to dismiss his claims and that he is entitled to a jury trial.  *See id.* at 5-6.  Despite Matthews's failure to respond substantively to Defendants'

argument, the Court has considered the issue and agrees that Matthews's constitutional claims arise in a new context, given recent circuit authority, and are not cognizable under *Bivens*.

Constitutional claims for money damages against individual federal officers may be pursued (if at all) pursuant to *Bivens*, which holds that an individual may "recover money damages for any injuries he has suffered as a result of [federal] agents' violation of" his constitutional rights. *Sanders v. Sumner*, No. 6:24-CV-055-REW, 2025 WL 1413517, at *3 (E.D. Ky. May 15, 2021) (quoting *Bivens*, 91 S. Ct. at 2005). The *Bivens* remedy is judicially created and is only implied in limited circumstances. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017). Since *Bivens* was decided in 1971, the Supreme Court has recognized a private damages remedy for a constitutional violation in only three circumstances: (1) where federal officials searched a private residence without probable cause, in violation of the Fourth Amendment, *see Bivens*, 91 S. Ct. at 2005; (2) where a Congressman terminated an employee on the basis of gender, in violation of the Fifth Amendment, *see Davis v. Passman*, 99 S. Ct. 2264, 2279 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs, in violation of the Eighth Amendment, *see Carlson v. Green*, 100 S. Ct. 1468, 1474–75 (1980). *See Ziglar*, 137 S. Ct. at 1854–55 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

The Court employs a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. *See Hernàndez v. Mesa*, 140 S. Ct. 735, 743 (2020). First, the Court must decide if the plaintiff's claim presents a "'new context' or involves a 'new category of defendants'" for the application of *Bivens*. *See id*. (quoting *Corr. Servs. Corp v. Malesko*, 122 S. Ct. 515, 520 (2001)). If the claim arises in a new context, the Court then considers whether there

are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 100 S. Ct. at 1471).

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández*, 140 S. Ct. at 743 (collecting cases); *see also Malesko*, 122 S. Ct. at 520 ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). Moreover, the Supreme Court's clear directive is that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Iqbal*, 129 S. Ct. at 1948).

### i.    New Context

The Court must first determine whether Matthews's claims are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 137 S. Ct. at 1859. The Supreme Court has explained:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1843. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages [claim] was previously recognized." *Hernandez*, 140 S. Ct. at 735. The Sixth Circuit has cautioned that "[t]he context is new if it differs in virtually any way from the *Bivens* trilogy." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (citing *Ziglar*, 137 S. Ct. at 1859).

Matthews's claim is most akin to *Carlson*; nevertheless, given recent circuit emanations, it is sharply distinguishable and therefore presents a new context. In *Carlson*, the plaintiff alleged that prison officials were deliberately indifferent to the serious medical needs of her son, who suffered an asthma attack and died in federal prison. *See Carlson*, 100 S. Ct. at 1470 n.1 (detailing lack of adherence to prescribed care, delay in treatment, and use of inoperable medical equipment). Matthews's claims are substantially different from those presented in *Carlson*. As opposed to the fatal injury that occurred in *Carlson*, Matthews merely alleges that he suffered cuts, burning skin, hand and nerve injury, and a reduced ability to move his fingers as a result of correctional officers' use of force. *See* DE 1 at 8. As this Court must recognize, the Sixth Circuit considered allegations similar to Matthews's in *Anderson v. Fuson*, No. 23-5342, 2024 WL 1697766 (6th Cir. Feb. 1, 2024) and concluded that the claim presented a new context under *Bivens*. Like Matthews, the inmate in *Anderson* alleged that he was placed in four-point restraints, which resulted in painful wrist injuries that were not treated properly. *See id.* at *1, *3. In concluding that any deliberate indifference claim in *Anderson* constituted a new context under *Bivens*, the Sixth Circuit noted that the inmate's allegations "differ markedly from a prisoner dying after an asthma attack where his asthma was not properly treated." *See id.* at *3. The anti-extension sentiment from the Supreme Court, and the Circuit's comparative gloss, dictates the result here.

Other federal appellate courts have similarly looked to the degree of the plaintiff's alleged injury to determine whether the case is meaningfully different from *Carlson*. *See Waltermeyer v. Hazelwood*, 136 F.4th 361, 366–67 (1st Cir. 2025) (deliberate indifference claims arose in a new context when the plaintiff had received some medical care and did not allege that officials failed to adequately treat a life-threatening condition or extreme pain); *Johnson v. Terry*, 119 F.4th 840, 859 (11th Cir. 2024) (observing that "[t]he severity, type, and treatment of Johnson's injuries were

different from those of the plaintiff in *Carlson*," thus raising "a new context under the first-stage inquiry"); *but see Schwartz v. Miller*, 153 F.4th 918 (9th Cir. 2025) (concluding that the nature and severity of plaintiff's medical needs is "a difference in degree" and "is not a meaningful difference giving rise to a new context"); *Watkins v. Mohan*, 144 F.4th 926, 934 (7th Cir. 2025) (plaintiff's claim that prison officials gave him constitutionally inadequate care after hernia surgery "fit squarely within the *Bivens* claim recognized by *Carlson*.").

Consistent with the Sixth Circuit's decision in *Anderson* and decisions of the First and Eleventh Circuits, the Court concludes that Matthews's deliberate-indifference claims arise in a new context. The Court does view *Carlson* as, obviously, still good law. However, in assessing whether a case falls within or is an extension of the recognized claim, the Court must apply the standards higher courts direct, and *Anderson* plainly sorts Matthews's facts into the disfavored extension category. *Cf Mattox v. United States*, No. 7:24-CV-74-REW, 2025 WL 2524845, at *10 (E.D. Ky. Sep. 2, 2025) (determining *Bivens* medical indifference action persisted based on comparison to *Carlson* scenario and consideration of relevant separation of powers concerns). Therefore, Matthews's claim presents a new context, so the Court proceeds to the special-factors analysis.

### ii.    Special Factors

Since Matthews's allegations constitute a new context for implying a remedy under *Bivens*, the Court must determine whether there are special factors that counsel against extending the remedy to Matthews's claims. *See Ziglar*, 137 S. Ct. 1843. The Supreme Court has cautioned that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. 1793 (quoting *Hernàndez*, 140 S. Ct. 735).

There are multiple reasons to pause before applying *Bivens* in this context. First, Congress created a statutory cause of action against state actors that violate another's constitutional rights. *See* 42 U.S.C. § 1983. But it has never done so for federal actors. To the contrary, in passing the Prison Litigation Reform Act of 1995, Congress evinced its intent to curtail prisoner litigation by creating additional procedural hurdles for prisoners bringing claims in federal court. *See Ziglar*, 137 S. Ct. at 1865.

Next, federal prisoners have alternative means to vindicate their constitutional rights through the ARP, which remains a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 122 S. Ct. at 523. This remedy is not considered less effective simply because it is a creature of regulation rather than statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy.") (emphasis added); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (citing *Minneci v. Pollard*, 132 S. Ct. 617, 623 (2012)) ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress."). Nor is the grievance program considered a less effective remedy merely because it does not provide the deterrence afforded by damages. *See Schweiker v. Chilicky*, 108 S. Ct. 2460, 2467 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative that counsels against inferring a *Bivens* remedy. *See Callahan*, 965 F.3d at 524.

Additionally, the Sixth Circuit has noted that the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General also

may serve to deter misconduct by prison officials. *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Malesko*, 122 S. Ct. at 521 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Matthews's claims is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources"—all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 107 S. Ct. 2254, 2259 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (citation omitted) (quoting *Turner*, 107 S. Ct. at 2259).

Because multiple factors counsel strongly against implying a *Bivens* remedy here, the Court **DISMISSES** Matthews's constitutional claims for damages against Gilley, Privett, Perry, and Stephens. Simply put, the claim does not survive under the *Egbert* rubric.

### III.    Rule 12(b)(1) Motion

### A.    Standard

The United States has sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 114 S. Ct. 996, 1000 (1994). The Federal Tort Claims Act ("FTCA") grants a limited waiver of sovereign

immunity and allows tort claims against the United States for injury or loss of property, or for personal injury or death caused by the negligent or wrongful acts of governmental employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1). The FTCA's broad waiver of sovereign immunity has exceptions. *See Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022). One exception, found in 28 U.S.C. § 2680(h), exempts from the waiver "a subset of enumerated intentional torts, specifically 'assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *See Rudd v. United States*, No. 5:22-cv-00201-GFVT, 2023 WL 4936671, at *4 (citing 28 U.S.C. § 2680(h)). However, there is an exception to this exemption—i.e., a claim against the United States is permitted—for six intentional torts, including assault and battery, committed by law enforcement officers acting within the scope of their employment. *See Millbrook v. United States*, 133 S. Ct. 1441, 1444 (2013) (citing 28 U.S.C. §§ 1346(b)(1), 2680(h)).

This Court has made it clear that "'[a] motion to dismiss on the basis that plaintiff's claim is barred by sovereign immunity is a motion to dismiss for lack of subject matter jurisdiction.'" *B.A. v. United States*, No. 5:21-cv-106-DCR, 2021 WL 4768248, at *1 (E.D. Ky. Oct. 12, 2021) (quoting *Sawyers v. United States*, No. 3:15-cv-873-GNS-DW, 2016 WL 7223430, at *1 (W.D. Ky. Dec. 12, 2016)). Federal Rule of Civil Procedure 12(b)(1) permits a dismissal motion for lack of subject matter jurisdiction. Motions to dismiss for lack of subject matter jurisdiction "generally come in two varieties: a facial attack or a factual attack." *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The United States may put forth either type of attack—factual or facial—when asserting sovereign immunity. *See L.C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) ("The district court incorrectly concluded that any

14

assertion of sovereign immunity amounts to a factual attack on jurisdiction. Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) [may] either facially or factually attack jurisdiction." (citations omitted)).

A facial attack on the subject matter jurisdiction of the complaint challenges the sufficiency of the pleadings, and the district court accepts as true the allegations in the complaint in deciding the motion. *See id.*; *see also Oquendo v. United States*, No. 7:23-cv-40-REW-EBA, 2025 WL 2495771, at *5 (E.D. Ky. Aug. 29, 2025) ("A facial attack 'goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction.' A facial attack 'challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true.'") (internal citations omitted). Conversely, a factual attack on subject matter jurisdiction "attacks the factual allegations underlying the assertion of jurisdiction." *See Oquendo*, 2025 WL 2495771, at *5 (quoting *Bannister v. Pearce*, No. 22-91-DLB-EBA, 2025 WL 394949, at *2 (E.D. Ky. Feb. 4, 2025)). In a factual attack, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Rudd*, 2023 WL 4936671, at *2 (citing *Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015)). To perform this analysis, the court has "broad discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *See id.* (quoting *In re Steinle*, 835 F. Supp. 2d 437, 441 (N.D. Ohio 2011)).

On May 22, 2023, Matthews completed a Claim for Damage, Injury, or Death (SF-95) Form, stating as follows:

> On 3/14/23 I was tortured by FBOP staff causing me a broken pinky, fractured eye socket, deep lacerations around both wrists and ankles, and severe nerve damage to both hands making them paralyzed. My front teeth were chipped and deep lacerations around my stomach and back. My mental health has also deteriorated

> because of this incident.  All my property, pictures, food, legal mail, clothes was
> trashed by C/O D. Keeton. . . .  Property was thrown in trash.  Everything except
> tables and MP3.

*See* DE 29-2 at 1.  Matthews also reported: "I can't submit a written report by a physician because

at this time the institution will not give me medical attention."  *See id.* at 3.  Matthews listed the

correctional officers and medical staff members responsible for the alleged conduct, and he

demanded $10,002,000.00 in damages.  *See id.* at 1, 3.  The Court deemed the SF-95 an amendment

to the original complaint.  *See* DE 34 at 4-5.  In addressing the three embedded tort claims in this

allegation, and as further explained below, Defendants attack the sufficiency of the pleadings.

Thus, while Defendants do not specifically denote it as such, the Court construes Defendants'

motion as a facial attack on the subject matter jurisdiction alleged in Matthews's complaint, so the

Court will accept Matthews's allegations as true.  *See Gentek Bldg. Prods., Inc.*, 491 F.3d at 330.

### B.  Medical Negligence

Defendants contend that Matthews's "single sentence about not receiving medical attention

is insufficient to establish all four elements of a medical negligence claim under Kentucky law."

*See* DE 35 at 23.  "Kentucky requires patients alleging malpractice to prove the same basic

elements of any common-law negligence claim."  *Phillips v. Tangilag*, 14 F.4th 524, 539 (6th Cir.

2021).  A patient must show that the provider owed them a duty, that the provider breached this

duty by providing services that fell below the medical community's standard of care, that he was

injured, and that a causal connection exists between the breach and the injury.  *See id.*; *see also*

*Lake Cumberland Reg'l Hosp., LLC v. Adams*, 536 S.W.3d 683, 690 (Ky. 2017).

Matthews's medical negligence claim has obvious pleading deficiencies.  Matthews does

not allege that the failure to receive medical care resulted in injury beyond that allegedly inflicted

by the BOP officers.  Failure to allege further injury necessarily means Matthews also failed to

adequately plead causation. Accordingly, because Matthews failed to plead a prima facie medical negligence claim, Defendants' motion to dismiss will be granted with respect to Matthews's medical negligence claim.

### C. Property Loss

Defendants argue that Matthews's claim of property loss must be dismissed because such claim is not cognizable under the FTCA based on the exception to the waiver contained in 28 U.S.C. § 2680(c). *See* DE 35 at 23. That section exempts from the sovereign immunity waiver "[a]ny claims arising in respect of…the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." *See* 28 U.S.C. § 2680(c); *see also Ali v. Fed. Bureau of Prisons*, 128 S. Ct. 831, 835-36 (2008) (holding that BOP officers are covered as "other law enforcement officer[s]" under § 2680(c)).

The Court rejects Defendants' conclusory argument and finds, on this record, this exception inapplicable to Matthews's lost property claim. The Supreme Court interpreted § 2680(c) to exempt "any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained goods." *Kosak v. United States*, 104 S. Ct. 1519, 1523-24 (1984). Cases in the Sixth Circuit that have dismissed inmate FTCA lost or destroyed property claims based on § 2680(c) are distinguishable from the case at bar. Such cases involve inmate property that was inventoried, confiscated, or otherwise detained by BOP officers and subsequently destroyed, lost, or otherwise made unavailable to the owner-inmate. *See Storm v. Bureau of Prisons*, No. 4:08CV1690, 2009 WL 1163123, at *2-3 (N.D. Ohio Apr. 29, 2009); *Easterling v. United States*, No. 07-CV-429-JBC, 2008 WL 906473, at *2-3 (E.D. Ky. Apr. 1, 2008); *Brooks v. Silva*, No. 7:08-CV-105-KKC, 2009 WL 1211024, at *3 (E.D. Ky. May 1, 2009); *McCalla v. United States*, No. 15:15-CV-387-JMH, 2016 WL 1698295 (E.D. Ky. Apr. 27, 2016).

Here, conversely, Matthews alleges that C.O. Keeton intentionally "trashed" virtually all his property, which the Court views as distinct from property loss occurring incidental to confiscation or inventory. Defendants provide no argument or authority for applying the exemption to these facts. Thus, given the § 2680(c) exemption's apparent inapplicability, the property loss claim may proceed under § 1346(b)(1) at this procedural step.

### D. Intentional Torts

Defendants contend that Matthews's intentional tort claims must be dismissed because, as alleged, the conduct underlying the claims was not done in the scope of the BOP officers' employment. The Court applies the law of the state where the act occurred in deciding whether the act is within the scope of employment. *See* 28 U.S.C. § 1346(b)(1); *see also Coleman v. United States*, 91 F.3d 820, 825–26 (6th Cir. 1996) (noting that "the scope of employment issue is governed by the law of the state in which the conduct at issue occurred"). Because the alleged wrongful conduct occurred in Kentucky, Kentucky law will determine whether the BOP officers were acting within the scope of their employment. As this Court has explained:

> Under Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005). "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A.*, 2021 WL 4768248, at *2. Matthews bears the burden of demonstrating that the correctional officers acted within the scope of their employment with the BOP. *See Rudd*, 2023 WL 4936671, at *5 ("As the party invoking jurisdiction under the FTCA, Ms. Rudd bears the burden of demonstrating that Mr. Salcido acted within the scope of his employment with the Bureau of

18

Prisons when he raped her."); *see also Carlyle v. United States, Dep't of Army*, 674 F.2d 554, 556 (6th Cir. 1982).

Applying this framework to the instant case, Defendants argue dismissal is proper because the gratuitous violence alleged by Matthews does not fall within the scope of employment, and the torture described by Matthews would not further the BOP's interests. *See* DE 35 at 25. Again, Defendants' attack is facial, testing only the allegations. Matthews alleges a plethora of intentionally tortious conduct committed by multiple BOP staff members, all within three days of detention of Matthews pertinent to incidents at the McCreary SHU. Most of this conduct, as he alleges, was done to torture him as part of what he describes as a broader scheme by BOP staff to torture inmates. *See* DE 1 at 2, 5. The Court has often treated this sort of senseless, gratuitous violence as outside the scope of a prison guard's employment, as based on purely personal motives that are unrelated to mission or purpose of the BOP. *See Bannister*, 2025 WL 894949, at *5 ("The first alleged incident, even if true, falls outside of Pearce's scope of employment with the BOP. The proper inquiry is whether Pearce believed he was acting for the benefit of the BOP while beating and tormenting Plaintiff. Taking these allegations as true, the Complaint does not allege that Pearce thought he was furthering the BOP's interests. Rather, the abuse described is the type of senseless, gratuitous violence that does not fall within the scope of a prison guard's employment.") (internal citations omitted); *Robinson*, 2024 WL 1219716, at *10 ("Robinson specifically alleges that Cima and Asher assaulted him in retaliation for Privett's false allegations that he engaged in a sexual act, not for any legitimate job-related purpose. Such conduct, if true, in no way furthers the BOP's missions or functions.") (internal citations omitted).

However, and giving appropriate breadth of construction to the pro se contentions, Matthews advances certain allegations of intentional, tortious conduct motivated not by

generalized torturous intent, but for legitimate interests of the BOP. Specifically, Matthews alleges that as C.O. Walker sprayed the OC spray into his cell, he yelled, "stop fighting your celly." *See* DE 1 at 4. The Complaint reports part of the event trigger as Matthews covering his cell window and opposing or negotiating the removal of that cover. *See id.* Matthews also alleges that, in response to being spit on by Matthews, L.T. Stapleton placed Matthews in a four-point restraint and left him in this position for 48 hours. *See id.* at 7.

Taking these allegations as true, they are sufficient to confer the allegation that the officers were acting within the scope of employment in subduing inmates fighting with one another, breaking SHU rules, or responding to an inmate displaying aggressive conduct toward staff, purposes that unquestionably may further the BOP's legitimate interests. *See Robinson v. United States*, No. 6:21-CV-204-REW, 2024 WL 1219716, at *10 (E.D. Ky. Mar. 21, 2024) (recognizing that "when a correctional officer attempts to control a non-compliant inmate," the force used "is more likely to be of the same general nature as [the conduct] authorized or incidental to the conduct authorized. Thus, not every use of excessive force by an officer, even when characterized as an assault, will necessarily fall outside the scope of the officer's employment.") (citations and quotation marks omitted). Section 2680(h) often applies when drawing this line, as an officer applying force (here, *e.g.*, perceiving a need to restrain an inmate) may cross the line from legitimate force to battery. The law enforcement proviso operates to bring such conduct potentially within the scope of the waiver. Again, this Court has regularly treated BOP officers as within the law enforcement definition. *See, e.g., Oquendo*, 2025 WL 2495771, at *9-11 (finding, in the facial context, officers assaultive conduct (as alleged) was done with the intent to subdue an out-of-control inmate and therefore within the scope of employment, despite potential use of excessive force); *Boswell v. United States*, No. 7:23-66-KKC, 2025 WL 967161, at *5 (E.D. Ky. Mar. 31,

2025) (treating, in the facial context, officers' conduct (as alleged) as within the scope of employment when it occurred at their place of business, during their normal working hours, and with the subjective desire to further the employer's business). Here, given the range of allegedly involved officers and the extensive use of force and restraint claimed, along with the alleged precipitating events, the case warrants the factual development of discovery. If the BOP officers employed force and restraint against Matthews, and if Matthews alleges that the application amounted to "assault," *see* DE 29-2 at 3, the pleadings alone cannot answer how § 2680(h) will apply to the circumstance.

In sum, Matthews has alleged certain facts that, if accepted as true, establish that the officers acted, at least in part, with the subjective intent of furthering their employer's interest of security and inmate compliance at the SHU. Accordingly, the Court denies Defendants' motion to dismiss Matthews's assault and/or battery claims.

### IV.    Injunctive Relief

Matthews seeks injunctive relief mandating that he not be transferred back to USP McCreary or any other BOP facility. The appropriate means to obtain injunctive relief to restrain federal officials from ongoing violations of federal constitutional rights is a claim directly under the Constitution. The Court possesses subject matter jurisdiction over such claims pursuant to the general federal question statute, 28 U.S.C. § 1331, and the plaintiff may seek injunctive relief against the federal agency or officer pursuant to 5 U.S.C. § 702.

Prisoners have no constitutionally protected right to be housed in a particular facility. *See Cooper v. Bower*, No. 5:15-cv-P249-TBR, 2017 WL 3389521, at *4 (W.D. Ky. Aug. 4, 2017) (citing *Montanye v. Haymes*, 96 S. Ct. 2543 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986)). Moreover, the PLRA provides that "[p]rospective relief in any civil action with respect to

prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A).  Although Matthews contends that he "will be picked on and harassed no matter where [he] is in the BOP," *see* DE 37 at 10, he does not allege facts indicating that his constitutional rights are likely to be violated going forward if he is housed in a BOP facility.  *See Ogle v. Ohio Civil Serv. Emps. Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1083 (S.D. Ohio July 17, 2019) (noting that past injuries alone are insufficient to establish standing with respect to claims for injunctive relief (citing *City of Los Angeles v. Lyons*, 103 S. Ct. 1660 (1983))).  Of course, Matthews is under an undischarged federal sentence, and the BOP is the federal custodian.  Thus, Matthews's request for injunctive relief will be denied.

## IV.    Conclusion

Based on the foregoing, the Court hereby **ORDERS** as follows:

1.  Defendants' motion to dismiss (DE 35) is **GRANTED in part** and **DENIED in part**.

2.  Matthews's claims for deliberate indifference to his serious medical needs under *Bivens* and his FTCA claims for medical negligence are **DISMISSED with prejudice**.

3.  Matthews's claim for injunctive relief mandating that he not be housed at USP McCreary or any other FBOP facility is **DISMISSED with prejudice**.

4.  Matthews's FTCA claims for assault and/or battery and destruction of property **REMAIN PENDING**.  The United States must file a responsive pleading in accordance with Rule 12(a)(4) of the Federal Rules of Civil Procedure.

5.  The Court **REFERS** this matter to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) to conduct all pretrial proceedings, including discovery and pretrial management, and oversee the matter until the point of dispositive motions, at which

time the case will revert back to the undersigned for resolution and the setting of any trial date. The Court wants to ensure adequate development and discovery of the specifics and bases for force application, including restraints and applicable video/BOP records, during the period at issue in this case.

6. The Court **DIRECTS** the Clerk to assign this matter to a Magistrate Judge per General Order 25-18.[3]

This 4th day of February, 2026.



Signed By:

**Robert E. Wier**

**United States District Judge**

---

[3] Due to a scrivener's error in the Memorandum Opinion & Order at DE 39, the Court directed the Clerk to assign this matter to a Magistrate Judge pursuant to General Order 23-10. The Court issues this Amended Order to reflect that the General Order assigning the Magistrate Judge is, as of January 1, 2026, General Order 25-18.